[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These matters came to this court in the form of two related zoning cases. The first case is an appeal from a decision of the Zoning Board of Appeals for the City of Shelton ("ZBA") denying plaintiff's appeal from a decision of the Planning and Zoning Commission ("P Z") concerning a certificate of zoning compliance relative to a garage/storage structure. This appeal is captioned John J. Dubyoski, et al v. Lawrence Sheridan, ZoningEnforcement Officer of the City of Shelton, et al., bearing docket number CV95 0049812S.
The second cause is an enforcement action, relative to the same garage/storage structure, brought by Lawrence Sheridan as zoning Enforcement Officer ("ZEO") of the City of Shelton, pursuant to the provisions of § 8-12 Connecticut General Statutes. The plaintiff therein seeks a temporary and permanent injunction restraining the defendants from constructing, altering or using the above described structure. The plaintiff further seeks damages, costs and attorney's fees. This case is captionedLawrence Sheridan, Zoning Enforcement Officer of the City ofShelton, et al. v. John J. Dubyoski, et al., and bears docket number CV95 0050859S. Upon agreement of the parties, and with the consent of the court, the matters were consolidated for trial.
The court finds that the underlying substantive facts proven relate to certain improvements located at 26 Hamilton Drive, Shelton, Connecticut, property owned by John Dubyoski and Theresa Dubyoski (collectively "Dubyoski"). Said property is located in an R-1 zone, consisting of all one-family residences. The permitted uses in the R-1 zone are set forth in the Shelton Zoning Regulations ("Zoning Regulations") at Schedule A, being a 12 page schedule therein contained. Standards for development within this zone are found in Section 24, at pages 11-4, et seq., together with Schedule B, attached thereto and made a part thereof.
On or about October 26, 1993, Dubyoski applied for a CT Page 9539 certificate of zoning compliance ("First Certificate") to permit the construction of a garage/storage structure together with attached covered patio noted on the certificate as an extended roof. Said notation was placed on the application by zoning enforcement officer Tisi ("Tisi") an assistant to the ZEO.[1]
The only evidence as to any discussions relating to height at the time of the original application came from the defendant John Dubyoski. Mr. Dubyoski testified that he asked about the permitted height of the structure he intended to build and was told by Tisi that the R-1 zone permits structures up to 40 feet. He went on to testify that knowing peak height would be well below that elevation but, not knowing exact building height due to carry and truss elevation, he inserted ceiling height of 14 feet on the application. While scaled height of 24'6" could be determined from the submission, Tisi apparently either chose not to do any such calculation or determined that the scaled height was permitted. The ZEO testified that the application submitted by Dubyoski complied with the requirements of Section 3.2 of the Regulations in all respects. Section 3.2 of the Regulations provides:
 3.2 Application for Certificate of Zoning Compliance:
Application for a Certificate of Zoning Compliance shall be submitted to the Zoning Enforcement Officer prior to Construction, reconstruction, extension, enlargement, moving or structural alteration of any building or other structure and prior to the use or occupancy of any land, building or other structure. The application shall be accompanied by a plan drawing or drawings in duplicate, drawn to scale, and showing the following:
 3.2.1 The area of the lot and the dimensions of all lot lines;
 3.2.2 The setbacks, dimensions, height, sue, floor area and ground coverage of all buildings and other structures, whether existing or proposed;
 3.2.3 The location, area and dimensions of offstreet parking and loading spaces, any construction required in connection therewith and the means of access to such spaces, except that this requirement shall not apply to a dwelling for one (1) CT Page 9540 or two (2) families;
 3.2.4 The location, area and dimensions of any outside storage areas, site development and landscaping features that are subject to the provisions of these Regulations, except that this requirement shall not apply to a dwelling for one (1) or two (2) families;
 3.2.5 The location of any existing or proposed private sewage disposal system, and requisite approval by the Valley Health District (VHD), as required, and
 3.2.6 Such additional information as may be necessary to determine compliance with these Regulations.
 In addition the application shall be accompanied by other data, statement, plans and drawings necessary to determine compliance with these Regulations.
The ZEO further testified that the purpose of the application and submittal material was to permit a determination of zoning compliance as a condition precedent to obtaining a building permit. Subsequent to the application, the ZEO issued Dubyoski the requested First Certificate designated #9103.[2]
Thereafter, a building permit was obtained[3] and in early October of 1994 Dubyoski commenced construction.
On or about October 11, 1994, the ZEO issued a cease and desist order claiming that the building ". . . exceeds the 14' height that you stated on your Zoning Compliance." The order went on to provide that Dubyoski must ". . . remove the commercial backhoe upon receipt of this order."[4] The court notes that nowhere in the cease and desist order does the ZEO indicate that the building exceeds permitted height under the Regulations.
On October 13, 1994, pursuant to the ZEO's advice, Dubyoski filed an application for a Second Certificate of zoning compliance designated #9597, ("Second Certificate"), clarifying the maximum height of the peak of the garage/storage structure to be 24'6". The ZEO signed the Second Certificate certifying ". . . that I have reviewed all required submitted plans and/or other CT Page 9541 pertinent and relevant data and have determined that the proposed structure(s) and/or use(s) complies with the requirements of the Zoning Regulations of the City of Shelton."[5] The ZEO issued the Second Certificate subject to certain restrictions. Specifically, the ZEO required that Dubyoski
(1) could not run a business at that address;
(2) could not install heating in the garage;
 (3) could not store commercial equipment in the garage; and
 (4) could not have the height of the garage doors exceed "9/10" feet.
The ZEO referred the Second Certificate to the P Z for comment. The P Z scheduled and held a public hearing concerning the Second Certificate on November 14, 1994. The P Z adopted the restrictions set by the ZEO by voting to approve Dubyoski's certificate of zoning compliance and lifting the cease and desist order issued by the ZEO against Dubyoski. At the time of approval, two additional conditions or restrictions were imposed:
 1. The garage/storage structure could not exceed 18 feet peak height.
 2. The existing roof over the patio/porch must be removed.[6]
On or about November 29, 1994, Dubyoski appealed the P Z's order to the ZBA claiming, in part, that the garage meets all zoning requirements including, but not limited to, height requirements, and therefore, the P Z's order is void as a matter of law.[7] On December 20, 1994, January 17, 1995 and February 21, 1995, the ZBA held a public hearing concerning Dubyoski's appeal.[8] On February 21, 1995, the ZBA voted 4 to 1 to deny the appeal, thereby upholding the P Z's order. The ZBA published notification of its denial of Dubyoski's appeal on March 1, 1995. The current appeal and enforcement action have followed.
Aggrievement on the part of an appellant is required to give the court subject matter jurisdiction over an administrative appeal. Pleading and proof of same is essential. Park CityCT Page 9542Hospital v. Commission on Hospitals and Health Care, 210 Conn. 697,702, 556 A.2d 602, 604 (1989); Walls v. Planning and ZoningCommission of Avon, 176 Conn. 475, 476 (1979).
To successfully establish aggrievement, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of the community as a whole. Second, the party must show that this specific, personal and legal interest has been specifically and injuriously affected by the decision. However, a certainty of adverse impact need not be shown. All that is required is the possibility that some legally protected interest has been adversely affected. Hall v.Zoning Commission, 181 Conn. 442, 444, 445 (1980).
The court finds that Dubyoski is the owner of the property subject of the appeal herein. As such owner, the required pleading and proof of aggrievement has been established, an owner always being an aggrieved party. Woods Associates v. Planning andZoning Commission of the Town of Madison, 219 Conn. 303, 308
(1991); Bossert Corporation v. City of Norwalk, 157 Conn. 279,285 (1968).
Having resolved the jurisdictional issue, the court now turns to a determination of whether the ZBA could find, based upon the evidence presented, that the P Z acted in accordance with the regulations in reaching a conditioned approval on the Second Certificate. Turning to the record, it is clear that many ZBA members as well as neighbors were concerned that the garage/storage structure was large and lends itself to commercial use. Clearly, that concern was justified given the fact that the first cease and desist order contained a reference to commercial use[9] and the second cease and desist related directly to this issue.[10] The court concludes from a review of the record as a whole that the P Z had exactly that in mind when conditioning the second certificate. In showing such concern and insight, both boards displayed a keen sense of duty to the citizens of the City of Shelton and particularly to the neighbors most directly affected.
However, the court has reviewed the zoning regulations in great detail, and finds that, other than schedule limitations, they are devoid of any authority to impose such conditions. The imposition of conditions which prohibit commercial use are mere redundancies, as the same are not permitted in the R-1 zone. CT Page 9543 Whether or not these restrictions remain on the certificate of zoning compliance, even though inappropriate, is of no consequence. Any violation relating to use of the premises and structure may be and should be addressed by appropriate enforcement proceedings.
More importantly, the record is equally devoid of any support for a finding that this garage/storage structure violates the regulations. Clearly, the height limitation in the R-1 zone is 40 feet and three stories (30 in some circumstances relating to setback). The ZEO testified that this limitation applies to attached and unattached structures. Nowhere in the zoning regulations does the court find any reference to an 18 foot overall height limitation or a 9/10 foot garage door limitation. Additionally, no prohibition exists which would not allow for the porch/patio to be covered.
Although both the P Z and the ZBA apparently were motivated by an admirable civic duty to the Dubyoski's neighbors, what in fact has occurred is a knee-jerk reaction to poorly written regulations or at least regulations in need of corrective P Z action. Any such Band-Aid approach clearly has the potential for the imposition of arbitrary criteria and unlawful conditions, which the court finds has occurred and will inevitably continue to occur if regulation-tightening does not take place. Administrative regulations must have adequate, fixed and sufficient standards to guide the agency and those affected, in their application, to avoid decisions which allow for interpretation and application pursuant to arbitrary choice on an application-by-application basis. Ghent v. Planning Commission ofthe City of Waterbury, 219 Conn. 511, 517 (1991). To give broad and unfettered discretion lends itself to expediency rather than service of the public welfare.
Concern for aesthetic and economic impact, while understandable from the neighbors' point of view and salutary from the perspective of the P Z and ZBA, are not appropriate considerations under the zoning regulations as currently written. The court notes with some interest that, had certain site plan and special exception language been incorporated into Schedule A #62, the result in this case might have been different.
For example, in Chapter 11 of the zoning regulations, architectural compatibility is made a specific standard where professional use is introduced into certain residential zones. CT Page 9544 Section 31.6.5 provides:
 Any exterior additions, permitted signs, changes and additions to existing residential structures for professional office use shall retain a basic residential design and scale and shall be architecturally compatible with the surrounding neighborhood. (Emphasis added.)[11]
Section 31.6.6 provides:
 The Commission may impose such other controls and restrictions as it deems necessary to protect adjacent properties and assure compatibility with the surrounding residential neighborhood.[12]
While not passing on the legality or effect of these provisions, the court notes that certain parameters are set forth therein that could be considered for the future.
The court, constrained by the existing zoning regulations, therefore finds that the following conditions imposed by the P Z are improper and void:
 1. That the garage doors could not exceed 9 feet in height.
 2. That the garage/storage structure could not exceed 18 feet peak height.
 3. That the existing roof over the patio/porch area must be removed.
The court further finds that the record and indeed the very notice of ZBA action[13] is absent of specific findings and reasons for Board action.
The decision of the ZBA denying the appeal from the P Z is reversed; this appeal is sustained; the conditions as set forth hereinabove are found to be void, are stricken and certificate of zoning compliance #9597 as modified in accordance with the provisions of this judgment shall remain in full force and effect.
Consistent with the above, the injunctive relief, costs and attorney's fees sought in the enforcement proceeding are denied. CT Page 9545
Comerford, J.